# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| **MAZEN ABU-HATAB, M.D.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 3:06-CV-436 |
| | ) (Phillips) |
| **BLOUNT MEMORIAL HOSPITAL, INC., and** | ) |
| **NASEEM H. SIDDIQI, M.D.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

Plaintiff, Dr. Mazen Abu-Hatab, has sued defendants alleging he was retaliated against for approaching the leadership of defendant Blount Memorial Hospital about the possibility of establishing a "neutral dialysis unit." Plaintiff alleges that he experienced retaliation for his constitutionally protected speech and was otherwise denied due process of law due to Blount Memorial's suspension of his medical staff privileges which ultimately resulted in the permanent removal of his staff privileges at Blount Memorial. Based on these allegations, plaintiff asserts two claims for alleged violations of his civil liberties pursuant to 42 U.S.C. § 1983, and common law claims for breach of contract, defamation, and interference with business relations against defendants. Pending before the court are the following motions filed by the parties: (1) plaintiff's motion for oral argument on all pending motions [Doc. 28]; (2) plaintiff's motion for leave to file amended

complaint [Doc. 21]; (3) defendant Blount Memorial Hospital's motion to dismiss [Doc. 29]; and (4) defendant Dr. Siddiqi's motion to dismiss [Doc. 12].

I.

**Plaintiff's Motion for Oral Argument**

The parties have filed extensive briefs pertaining to the motions to dismiss in which they have fully briefed all of the issues in support of the parties' positions. The court has reviewed the briefs and the record in this case, and does not feel that oral argument is necessary. Therefore, plaintiffs' motion for oral argument [Doc. 28] is **DENIED.**

II.

**Plaintiff's Motion to Amend Complaint**

Plaintiff has moved for leave to amend his complaint. Although defendant Dr. Siddiqi opposes the motion, at this early stage in the case the defendant will not be prejudiced by the amendment. As Fed.R.Civ.P. instructs, leave to file an amended complaint shall be "freely given when justice so requires." Accordingly, for the good cause stated, plaintiff's motion to amend his complaint [Doc. 21] is **GRANTED.** Plaintiff is **DIRECTED** to file his amended complaint with the clerk.

## III.

## Blount Memorial Hospital's Motion to Dismiss

Defendant Blount Memorial Hospital moves the court to dismiss plaintiff's fourth claim for relief (defamation) and plaintiff's fifth claim for relief (tortious interference with prospective business relations). In support of the motion, Blount Memorial states that as a public hospital, it is immune from liability for such claims pursuant to the Tennessee Governmental Tort Liability Act (GTLA), Tenn. Code Ann. § 29-20-201, *et seq.* Thus, plaintiff's fourth and fifth claims fail to state claims for which relief may be granted and should be dismissed.

A motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867 (1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or

inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

Plaintiff concedes in his response [Doc. 31] that the cause of action stated in his amended complaint for defamation is not allowed under the GTLA. Accordingly, plaintiff's fourth claim for relief for defamation will be **DISMISSED** as to defendant Blount Memorial**.**

However, plaintiff asserts that his fifth claim for relief for interference with prospective business relations is not barred by the GTLA. In his amended complaint, plaintiff alleges that the wrongful conduct of Blount Memorial has interfered with his business relations with defendant, his patients at defendant's hospital and other facilities, and insurance companies. Blount Memorial contends that plaintiff's claim for interference with prospective business relations is barred by § 29-20-205(2) of the GTLA which provides an exception to the removal of immunity for injuries arising from "interference with contract rights." T.C.A. § 29-20-205(2); *Hobson v. Metro. Govt. Of Nashville,* 2003 WL 22071545. Blount Memorial argues that the exception to the removal of immunity for interference claims stated in § 29-20-205(2) should apply to claims based on interference with prospective business relationships as well as contractual relationships.

In *Trau-Med of Am., Inc v. Allstate Ins. Co.,* 71 S.W.3d 691 (Tenn. 2002), the Tennessee Supreme Court stated that the cause of action for intentional interference with

a business relationship is merely "an extension of the well-known [tort of] interference with contractual relations. *Id.* at 699. The court further explained that the business relationships protected by the tort of intentional interference with business relationships "include any prospective *contractual* relations . . . if the potential contract would be of pecuniary value," including a "continuous business or other customary relationship" which is non-contractual. *Id.* at 701 (emphasis provided). As this tort is an extension of the tort of interference with contractual relations, the court finds that it is also subject to the GTLA's retention of immunity for claims of interference with contract rights. *See Martinek v. United States,* 254 F.Supp.2d 777, 790 (S.D. Ohio 2003) (determining that claims for interference with business relationships fall within the exclusion for claims arising out of interference with contract rights). Accordingly, plaintiff's fifth claim for relief for interference with business relations will be **DISMISSED** as to defendant Blount Memorial.

## IV.

### Dr. Siddiqi's Motion to Dismiss

Defendant, Dr. Naseem Siddiqi, moves the court to dismiss all of plaintiff's claims against him. First, Dr. Siddiqi asserts that plaintiff's claims brought under § 1983 should be dismissed because Dr. Siddiqi is a private actor whose actions cannot be fairly attributed to the state, and secondly, because they are time-barred. Plaintiff's constitutional claims for retaliation and violation of due process and his claim for defamation are governed by Tennessee's one- year statute of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(3). Dr. Siddiqi claims that Dr. Hatab knew or should have known about these

potential causes of action when his privileges were suspended as a "precaution" in November of 2004.  However, Dr. Hatab's privileges were not finally suspended until February 21, 2006, after completion of the hospital's investigation, fair hearing process, and an appeal intended to determine whether his privileges would be permanently suspended. Thus, Dr. Hatab's initiation of this case in November 2006 was within the one-year statute of limitations for his constitutional and defamation claims.

Dr. Siddiqi also claims that he cannot be a state actor for purposes of liability under § 1983.  To state a cause of action under 42 U.S.C. § 1983,  plaintiff must allege the "deprivation of rights secured by the United States Constitution or a federal statute by a person who is acting under color of state law." *Spadafore v. Gardner,* 330 F.3d 849 (6th Cir. 2003). Whether state action is present in a case involving private parties depends on whether the conduct allegedly causing the deprivation of a federal right can be fairly attributable to the state. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).  Private parties jointly engaged with state or local officials in prohibited conduct can be said to act under color of state law, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970).  Plaintiff's amended complaint alleges:

> In 2000, Dr. Siddiqi and Dr. Hatab had a falling out, and Dr. Hatab left Dr. Siddiqi's practice and continued a nephrology practice of his own almost entirely at BMH [Blount Memorial Hospital].
>
> Dr. Siddiqi, at the time of their separation, threatened Dr. Hatab, advising him that he would see to it that Dr. Hatab, following his separation from Dr. Siddiqi's practice, would not be able to practice in eastern Tennessee.  Following Dr.

Hatab's departure, Dr. Siddiqi and his nurses continued to provide dialysis services under contract to BMH and Dr. Siddiqi continued as Medical Director of the dialysis unit.

Prior to Dr. Hatab's departure from Dr. Siddiqi's practice he had a cordial and professional relationship with all of the nurses in the hospital, including those nurses employed by Dr. Siddiqi.

After his departure from Dr. Siddiqi's practice, Dr. Hatab began to experience a pattern of openly hostile and passive aggressive behavior directed toward him by Dr. Siddiqi's nurses in the dialysis unit at BMH, including the regular questioning of his orders and his directions for his dialysis patients.

Dr. Hatab learned that the nurses employed and controlled by Dr. Siddiqi were disparaging his professional competency to his patients behind his back.

On information and belief, the actions of the dialysis nurses toward Dr. Hatab were incited, directed and condoned by Dr. Siddiqi, acting under color of state law, as a means to the end of removing Dr. Hatab from the BMH medical staff and of removing him as a competitor in eastern Tennessee.

. . .

BMH administration and medical staff leadership, including but not limited to Mr. Dawson, Taylor Weatherbee, M.D., Timothy Thurston, M.D., Marvin Beard, M.D., and Samuel Evans, M.D., all acting under color of BMH and without explanation, sided with and conspired among themselves, Siddiqi and the Siddiqi nurses, and imposed a series of constraints and restrictions upon Dr. Hatab's ability to criticize the partiality and conduct of the Siddiqi nurses and restricted Dr. Hatab's professional practice of nephrology by imposing a set of rules and regulations that, if rigidly applied, interfered with Dr. Hatab's reasonable practice of nephrology and the safety of his patients.

Between March of 2002 and May of 2004, there was a period of relative quiescence between Dr. Hatab and the Siddiqi nurses and BMH.

In Spring of 2004, Dr. Hatab approached Dr. Weatherbee and the leadership of BMH medical staff with a request that BMH explore establishing its own "neutral" dialysis unit at BMH in order to reduce costs, eliminate favoritism in the treatment of competing nephrologists on the dialysis unit and to improve the quality of care provided to nephrology patients at BMH. . . .

The Siddiqi nurses filed a series of incident reports and other complaints with BMH challenging the quality of Dr. Hatab's care, asserting that he was regularly violating hospital mandated policy in his scheduling of patients on the nephrology unit, that he refused to provide HIV and hepatitis status on dialysis patients and that he regularly failed to respond to pages from the Siddiqi nurses. While Dr. Hatab was directed by BMH medical staff leadership not to complete incident reports regarding the Siddiqi nurses' conduct, BMH medical staff leadership did not give the Siddiqi nurses a similar directive.

On information and belief, the actions of the dialysis nurses toward Dr. Hatab were incited, directed and condoned by Dr. Siddiqi as a means to the end of removing Dr. Hatab from the BMH Medical Staff and of removing him as a competitor in eastern Tennessee and in retaliation for Dr. Hatab's publicly advocating for an independent dialysis service at BMH.

On November 10, 2004, Dr. Weatherbee, without a hearing and with the consent and approval of Mr. Dawson and BMH, and presumably with the implied or express consent of Dr. Siddiqi, summarily suspended Dr. Hatab's privileges for 29 days as a "precaution" even through there was no reasonable prospect of "an imminent danger to the health and/or safety of any individual" or interference with the orderly operation of the hospital" as provided in . . . the BMH *Credentials Procedure Manual.*

Thereafter, Dr. Weatherbee, acting on behalf of BMH and presumably with the express or implied consent of Dr. Siddiqi, appointed a three physician "investigation committee" to review

the allegations brought by the Siddiqi nurses against Dr. Hatab under BMH's "disruptive physician" policy.

. . .

The investigating panel composed of Dr. Matthew McCarty and Dr. James Milhollin, acting under the direction of BMH and Dr. Siddiqi, engaged in an inadequate, biased and one-sided investigation concerning Dr. Hatab that was not reasonably calculated to engender a fair review and determination of the facts and arrived at a negative conclusion as to Dr. Hatab's continuing privileges prior to obtaining any input from Dr. Hatab.

The panel failed and refused to investigate further and confirm unfounded allegations by the Siddiqi nurses. On information and belief, the actions of the dialysis nurses toward Dr. Hatab were incited, directed and condoned by Dr. Siddiqi as a means to the end of removing Dr. Hatab from the BMH medical staff and of removing him as a competitor in eastern Tennessee.

Siddiqi nurses, under the knowledge and direction of Dr. Siddiqi, made complaints concerning the quality of Dr. Hatab's professional care, despite the obvious economic conflicts and motivations on the part of the Siddiqi nurses. Additionally, the investigating committee took as true various complaints lodged at various times by the Siddiqi nurses concerning the quality of Dr. Hatab's clinical care without obtaining an outside review of his clinical practice despite recommendations that they obtain an outside review.

Dr. Weatherbee, in summarily suspending Dr. Hatab and subjecting him to a biased, one sided investigation, at the direction of BMH and Dr. Siddiqi, was motivated by a desire to retaliate against Dr. Hatab because of what he described as Dr. Hatab's "politicking" with respect to his pursuit of a neutral, hospital controlled, dialysis unit at BMH.

. . .

Defendants Dr. Siddiqi and BMH conspired and colluded in a joint action under color of state law to retaliate against Dr. Hatab for his expression of constitutionally protected speech.

Plaintiff has alleged facts, which if proved, could support his claim that Dr. Siddiqi was engaged in state action when he allegedly conspired with Blount Memorial, a public hospital, to violate Dr. Hatab's constitutional rights. Therefore, Dr. Siddiqi's motion to dismiss plaintiff's claims under § 1983 is **DENIED.**

Next, Dr. Siddiqi asserts that plaintiff's breach of contract claim should be dismissed because he was not a party to any alleged contract between plaintiff and Blount Memorial. In his response, Dr. Hatab agrees that his claim against Dr. Siddiqi for breach of contract should be dismissed. Accordingly, Dr. Siddiqi's motion to dismiss the breach of contract claim will be **GRANTED.**

Dr. Siddiqi next asserts that plaintiff has failed to state a claim for defamation against him and that any such claim is time-barred. In order to state a claim for defamation under Tennessee law a plaintiff must allege that (1) a party published a statement, (2) with knowledge that the statement was false and defaming to the other, or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem. Hosp.,* 995 S.W.2d 569, 571 (Tenn. 1999). Plaintiff's amended complaint alleges that a false and defamatory statement was published with the National Practitioner Data Bank and the Tennessee Board of Medical Examiners by Dr. Siddiqi or at his direction in his position as Medical Director of the BMH dialysis unit, with reckless disregard for the truth or with negligence. Therefore, plaintiff has alleged facts, which if proved, could support his claim for defamation under Tennessee law.

Moreover, the alleged statements to the National Practitioner Data Bank and the Tennessee Board of Medical Examiners were made in March 2006. Plaintiff's original complaint was filed on November 9, 2006, well within the one year statute of limitations set forth in Tenn. Code Ann. § 28-3-104(a)(1). Accordingly, Dr. Siddiqi's motion to dismiss plaintiff's claim for defamation is **DENIED.**

Last, Dr. Siddiqi asserts that plaintiff's complaint fails to state a cause of action for intentional interference with business relationships.[1] To state a claim for intentional interference with business relationships under Tennessee law, a plaintiff must allege (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *Trau-Med of Am., Inc.,* 71 S.W.3d at 701. Plaintiff's amended complaint alleges:

> Under Tennessee law, the Medical Staff By-laws of BMH constitute a contract at law between Dr. Hatab as a member of the BMH medical staff and BMH, which at all times relevant hereto entitled Dr. Hatab to the expectation and right to benefit from the due process and other provisions contained therein with respect to the procedures for the removal or restriction of

---

[1] Plaintiff stated in his response to the motions to dismiss that his fifth claim for relief in the amended complaint is for interference with business relations only, not interference with a contract.

> medical staff privileges. Dr. Hatab also operates under express or implied contracts with his patients and with insurance companies.
>
> Both BMH and Dr. Siddiqi had actual knowledge of these contracts. They intended through their actions to induce breaches of those contracts, such breaches occurred and the defendants acted maliciously in inducing the breaches.
>
> The wrongful deprivation by BMH, with the knowledge, approval and participation of Dr. Siddiqi, of Dr. Hatab's medical staff privileges constitutes a wrongful and unjustified interference with his contractual and prospective economic relations with BMH, with his patients at BMH and his patients at other facilities and with insurance companies such as Blue Cross and Blue Shield of Tennessee.
>
> On information and belief the actions in inducing the breaches of contract were taken for the purpose of removing Dr. Hatab as a competitor and physician on the BMH staff and in retaliation for his protected speech, specifically for his advocating for an independent dialysis service at BMH.
>
> As a direct and proximate result of the interference with contracts by BMH and Dr. Siddiqi, Dr. Hatab has suffered loss of income and earning potential, irreparable damage to professional stature and reputation, public humiliation and emotional suffering and damage to his future employability. . .

Therefore, plaintiff has alleged facts, which if proved, could support his claim that Dr. Siddiqi intentionally interfered with his business relations with BMH, with patients and with insurance companies. Therefore, Dr. Siddiqi's motion to dismiss plaintiff's claims for intentional interference with business relations is **DENIED.**

## Conclusion

For the reasons stated above, plaintiff's motion for oral argument [Doc. 28] is **DENIED**; plaintiff's motion to amend his complaint [Doc. 21] is **GRANTED**; defendant Blount Memorial's motion to dismiss [Doc. 29] is **GRANTED** as to plaintiff's fourth and fifth claims for relief; and defendant Dr. Siddiqi's motion to dismiss [Doc. 12] is **GRANTED IN PART AND DENIED IN PART;** the motion is **GRANTED** as to plaintiff's breach of contract claim, and **DENIED** as to plaintiff's claims for defamation, intentional interference with business relations for violation of his civil liberties pursuant to § 1983.

**IT IS SO ORDERED**.

            **ENTER:**

              s/ Thomas W. Phillips
              United States District Judge