UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MAZEN ABU-HATAB, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:06-CV-436 |
| ) | (GUYTON) |
| BLOUNT MEMORIAL HOSPITAL, INC., ) | |
| NASEEM H. SIDDIQI, M.D., and ) | |
| EXTRACORPOREAL TECHNOLOGIES, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 41]. Plaintiff Mazen Abu-Hatab, M.D., ("Plaintiff"), filed his original Complaint in this matter on November 9, 2006, but since that time the Complaint has been both modified by the Plaintiff and altered by the Court's dismissal of certain claims.

In his Amended Complaint [Doc. 68], the Plaintiff maintains the following claims for relief against Defendant Naseem Saddiqi, M.D., ("Dr. Siddiqi"): retaliation for speech in violation of the First Amendment of the United States Constitution, 42 U.S.C. § 1983; deprivation of procedural due process in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983; defamation under Tennessee common law; tortious interference with a contract under Tennessee common law; and unlawful procurement of breach of contract in violation of Tennessee Code Annotated § 47-50-109. In the Amended Complaint, the Plaintiff also maintains the following claims against Defendant Extracorporeal Technologies, Inc., ("ETI"): retaliation for speech in

violation of the First Amendment of the United States Constitution, 42 U.S.C. § 1983; deprivation of procedural due process in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983; defamation under Tennessee common law; and vicarious liability, through Tennessee common law, for the actions of Dr. Siddiqi and the nurses employed by ETI.

The Amended Complaint also included claims against Defendant Blount Memorial Hospital ("BMH") for retaliation for speech in violation of the First Amendment of the United States Constitution, deprivation of procedural due process in violation of the Fourteenth Amendment to the United States Constitution, and breach of contract under Tennessee common law. However, for the reasons explained in the Memorandum Opinion [Doc. 99] recently entered in this case, the claims against BMH shall be ordered dismissed.

On November 10, 2008, Dr. Siddiqi and ETI filed a joint Motion for Summary Judgment [Doc. 79]. The parties then submitted a Stipulation regarding the authenticity of numerous documents for the purpose of summary judgment [Doc. 81]. The Plaintiff responded to the Motion for Summary Judgment on December 31, 2008, [Doc. 89], and Dr. Siddiqi and ETI replied to the Plaintiff's response on January 13, 2009, [Doc. 94]. Dr. Siddiqi and ETI's Motion for Summary Judgment is now ripe for adjudication. The Court has reviewed the pleadings and memoranda submitted by the parties, and for the reasons more fully stated below, Dr. Siddiqi and ETI's Motion for Summary Judgment **[Doc. 79]** will be **GRANTED in so far as it requests that Claims One and Two, the pending federal claims against Dr. Siddiqi and ETI, be DISMISSED WITH PREJUDICE**. However, this Court will decline to exercise jurisdiction over Claims Four, Five, Six, and Seven, and these claims will be **DISMISSED WITHOUT PREJUDICE** for re-filing in the appropriate state court.

2

## I. FACTS[1]

The Plaintiff is a physician, who is duly licensed to practice medicine in the State of Tennessee and is board certified in the medical speciality of nephrology. The Plaintiff resides in Knoxville, Tennessee, and is a citizen of the state of Tennessee. BMH is a corporate entity, organized and chartered under Tennessee law and statutes for the purpose of operating a public hospital in Maryville, Tennessee.

### A. Plaintiff's Relationship with Dr. Siddiqi and ETI

The Plaintiff received his medical staff privileges at BMH in October 1998 while working for Dr. Siddiqi's medical practice. [Deposition of Mazen Abu-Hatab, M.D., ("Hatab depo.") at 8]. At the time Plaintiff started practicing at BMH, Dr. Siddiqi had a contract with BMH to provide services, equipment and staffing for the hospital's dialysis clinic. [Deposition of Samuel D. Evans, M.D. ("Evans depo.") at 24]. Dr. Siddiqi also served as the medical director of the BMH dialysis unit and, Plaintiff alleges, exercised dominion and control over policies, procedures, and discipline in the dialysis unit. [Doc. 68 at 3].

In 1999, the Plaintiff left Dr. Siddiqi's practice and began his own practice. [Hatab depo. at 9, Doc. 68 at 4]. During 2000, 2003, and 2004, the Plaintiff made repeated requests to BMH's administration and medical staff to discontinue contracting with Dr. Siddiqi and make other arrangements to maintain the dialysis unit. [Hatab depo. at 16-17]. In the spring of 2000, representatives of BMH and members of the medical staff leadership met with the Plaintiff and discussed contracting with a provider other than Dr. Siddiqi to supply dialysis services at BMH.

---

[1] A full explanation of the facts of this case is available in the Memorandum Opinion [Doc. 99] entered just prior to entry of this Memorandum Opinion. However, because only a small portion of these facts are pertinent to the instant Motion for Summary Judgment, the remainder of the facts have not been restated in this Memorandum Opinion.

[Hatab depo. at 18-22]. After entertaining the suggestions, BMH responded that its need for dialysis services was currently being met under the contract with Dr. Siddiqi. [Evans depo. at 49].

In August 2004, the Plaintiff made a presentation about concerns he had regarding Dr. Siddiqi's competing nephorology group providing the dialysis services, but the Plaintiff was absent when the Medical Department reconvened with BMH's administrator to address the concerns about the dialysis contract on October 27, 2004. [Hatab depo. at 43-44]. BMH's administrator explained the feasibility of obtaining an alternate contract or arrangement and stated BMH had concluded it was in its best interests to continue to contract with Dr. Siddiqi for the dialysis services. [Deposition of Taylor Weatherbee, M.D., at 154-56].

The Plaintiff maintains that after he left Dr. Siddiqi's practice, Dr. Siddiqi threatened to make sure the Plaintiff's practice failed. The Plaintiff also alleges that he was "subjected to an openly hostile environment" in the dialysis unit created by nurses employed by ETI, a corporate entity for which Dr. Siddiqi serves as president, medical director, and registered agent. [Doc. 88 at 2-3, Doc. 66 at 2]. The Plaintiff states that prior to leaving Dr. Siddiqi's practice he had a cordial and professional relationship with the nurses at BMH, including those employed by Dr. Siddiqi and ETI, but he maintains that after he left Dr. Siddiqi's practice the nurses began to act in an openly hostile and passive aggressive manner toward him. [Doc. 68 at 4]. The Plaintiff claims that nurses employed by ETI along with Dr. Siddiqi's son Nadeem, another ETI employee, filed complaints and incident reports with BMH in a bad faith effort to have his privileges revoked. [Doc. 68 at 6].

**B.    Plaintiff's Professional Issues at BMH**

Starting in the spring of 2000 and, excluding a brief respite from 2002 to mid-2004, for the next five years, Dr. Hatab's unprofessional behavior, including interaction with medical and nursing staff and his inability to follow hospital procedures, led to a series of meetings between he and the BMH administration, medical staff leadership, and representatives of the BMH Board of Directors. The Plaintiff's medical privileges at BMH were suspended for fourteen days in May of 2001, were suspended for twenty-nine days in November 2004, and were suspended in February of 2005 pending a determination of whether the privileges should be permanently revoked. On February 10, 2005, the Medical Executive Committee ("MEC") met with the Plaintiff to discuss ongoing violations of hospital policy by the Plaintiff, and after this meeting, the MEC recommended that the Board of Directors revoke the Plaintiff's privileges.

The Plaintiff requested a fair hearing, and a fair hearing was held on August 30, 31, and September 1, 2005. At the hearing, the Plaintiff and BMH were represented by counsel and presented witnesses and their arguments to a panel of three physicians and an attorney ("the Panel"). On November 9, 2005, the Panel unanimously recommended to the BMH Board of Directors that it affirm the MEC's recommendation based upon the Plaintiff's "multiple violations of hospital policy, a pattern of inappropriate conduct, and the failure of all previous collegial, education, and disciplinary actions to correct these problems." The Board of Directors held an appeals hearing at which each party made a twenty minute oral argument that was followed by a period for questions. The Board of Directors unanimously adopted the decision of the Panel, and on November 9, 2006. the Plaintiff filed the Complaint [Doc. 1] in the instant action.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims. Celotex, 477 U.S. at 323.

The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Nat'l Satellite Sports, Inc. v. Eliadis Inc., 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. Celotex, 477 U.S. at 324; McLean v. Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. Celotex, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986); Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

The Plaintiff's remaining federal claims against Dr. Siddiqi and ETI are for retaliation for speech in violation of the First Amendment of the United States Constitution and deprivation of

6

Case 3:06-cv-00436   Document 100   Filed 04/02/09   Page 6 of 11   PageID #: 1278

procedural due process in violation of the Fourteenth Amendment to the United States Constitution. In addition, the Plaintiff maintains a number of claims based upon Tennessee common law and the Tennessee Code Annotated. Dr. Siddiqi and ETI move for summary judgment in their favor on all of the claims.

**A.     First Amendment Retaliation Claim**

First, the Plaintiff claims that he spoke out on a matter of public concern regarding the management and operation of the dialysis unit at BMH, a public hospital, and he maintains that his speech on this matter was constitutionally protected speech. The Plaintiff argues that his complaints and requests for change in the operation of the dialysis unit were the substantial motivating factor for the eventual revocation of his privileges. The Plaintiff maintains that Dr. Siddiqi and ETI conspired and, in tandem with BMH, retaliated against him based upon constitutionally protected speech in violation of 42 U.S.C. § 1983. [Doc. 68 at ¶¶ 49-57].

All § 1983 violations depend on the plaintiff's ability to plead and prove that a defendant: 1) acting under the color of state law 2) deprived a plaintiff of a right secured by the Constitution or law of the United States. Stanley v. City of Norton, 124 Fed. Appx. 305, 309 (6th Cir. 2005) (citing Paul v. Davis, 424 U.S. 693, 696-97 (1976)). Dr. Siddiqi and ETI maintain that the Plaintiff has produced no evidence that either Dr. Siddiqi and ETI acted under the color of state law at any time during the events pertinent to this litigation. The Plaintiff maintains that ETI and Dr. Siddiqi were state actors because of the active role they played in managing the dialysis unit at BMH, a public hospital.

However, even assuming Dr. Siddiqi and ETI were acting under color of state law, the Court finds that summary judgment in favor of Dr. Siddiqi and ETI is proper in this case in light of the

7

analysis contained in the Court's previous Memorandum Opinion [Doc. 99]. The speech of a Plaintiff, who is also a public employee, is constitutionally protected only if (1) it touches on a matter of public concern and (2) there is no overriding state interest that would be undermined by the employee's speech or association. See Connick v. Myers, 461 U.S. 138 (1983).

As noted in the previous Memorandum Opinion [Doc. 99], the Court finds the Court of Appeals for the Sixth Circuit's decision in Jackson v. Leighton, 168 F.3d 903 (6th 1999), to be analogous and controlling. In Jackson, the court found that speech by the chairman of the Department of Orthopedic Surgery at the Medical College of Ohio regarding a merger, which would put the teaching institution's survival in danger, constituted a matter of public concern. Id. at 910. However, when the merger failed to go through, the same chairman spoke out against a proposed contract to allow Toledo Hospital to run the pediatrics unit at the college, and the court found this speech did not address a matter of public concern. Id. at 910. The court upheld the district court's granting of summary judgment reasoning that there was nothing in the record which indicated that the competitor's proposal would threaten provision of care in the locality and, further, classified the dispute as "another example of the 'the quintessential employee beef' of incompetent management." Id. at 910-11 (quoting Barnes, 848 F.2d at 735).

As in Jackson, the Court has before it a case of a dispute with management—more specifically, those to whom management duties were subcontracted. The Plaintiff has cited no authority indicating that contracting with ETI and Dr. Siddiqi to provide the dialysis services at BMH endangered the mission of BMH to provide competent, medical service to Blount County. Because the Plaintiff's criticisms of the dialysis contract involved administrative issues rather than

8

political, social, or economic concerns affecting the local community, his speech on the issue was not a public concern. See Jackson, 168 F.3d at 911.

The Court finds that there is no genuine issue as to material fact and that Dr. Siddiqi and ETI are entitled to judgment as a matter of law, because the Plaintiff's speech did not address a matter of public concern and therefore cannot serve as the basis for a violation of free speech. Accordingly, Dr. Siddiqi and ETI's Motion for Summary Judgment will be **GRANTED in part** and Claim One of the Amended Complaint will be **DISMISSED WITH PREJUDICE**.

**B.    Violation of Procedural Due Process**

The Plaintiff maintains that his privileges to practice medicine at BMH constitute a property interest under the Fourteenth Amendment to the United States Constitution and were wrongfully suspended and revoked in violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. Specifically, the Plaintiff claims that the revocation of his privileges was wrongful because: the standards contained in the Credentials Manual were impermissibly vague and overbroad and created an unfair burden of proof; he received inadequate notice; he was not given a sufficient opportunity to confront witnesses against him because hearsay was admitted at his hearing; and the hearing panel was biased against him and was not independent. [Doc. 68 at ¶¶ 58-62].

The Court analyzed the Plaintiff's due process claims in its previous Memorandum Opinion [Doc. 99] and that analysis is incorporated herein by reference. Based upon this analysis, the Court has found that a fair-minded jury could not return a verdict in favor of the Plaintiff on his procedural due process claim. Even viewing the Plaintiff's allegations of Dr. Siddiqi, ETI, and BMH conspiring against him in the light most favorable to the Plaintiff, the Court finds that all entities and

9

persons involved in the suspension and revocation of the Plaintiff's privileges afforded him a thorough review and hearing procedure. Further, the Plaintiff admitted in his deposition that he felt he was given an opportunity to explain his side of the story. [Hatab depo. at 85-86].

The Court finds that the Plaintiff was afforded proper notice and an opportunity to be heard at a meaningful time and in a meaningful manner, and no genuine issue of material fact remains as to this claim. Accordingly, Dr. Siddiqi and ETI are entitled to a judgment as a matter of law. Dr. Siddiqi and ETI's Motion for Summary Judgment will be **GRANTED in part** and Claim Two of the Amended Complaint will be **DISMISSED with prejudice**.

**C.     Claims Based Upon State Statutes and Common Law**

Having found that summary judgment in favor of Dr. Siddiqi and ETI is appropriate on all of the Plaintiff's federal question claims, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims. While the Court acknowledges that Dr. Siddiqi and ETI may pursue immunity under HCQIA as a defense to a number of these claims, federal jurisdiction cannot be predicated on an actual or anticipated defense, Vaden v. Discover Bank, 129 S. Ct. 1262, 1272 (March 9, 2009) (citing Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908)). This Court has only supplemental jurisdiction over the remaining state law claims, and a federal court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

The Court finds that the interests of judicial economy weigh in favor of the state law claims being resolved in state courts. Accordingly, Dr. Siddiqi and ETI's Motion for Summary Judgement will be **DENIED WITHOUT PREJUDICE** in so far as it seeks entry of summary judgment on

Claims Four, Five, Six, and Seven. Claims Four, Five, Six, and Seven will be **DISMISSED WITHOUT PREJUDICE** to allow re-filing of the same in the appropriate state court.

## IV. CONCLUSION

The Court finds that no genuine issues as to material facts exist as to Plaintiff Mazen Abu-Hatab's claims for relief against Defendant Naseem H. Siddiqi, M.D., and Defendant Extracorporeal Technologies, Inc., under 42 U.S.C. § 1983. The Court further finds that Defendant Naseem H. Siddiqi, M.D., and Defendant Extracorporeal Technologies, Inc., are entitled to judgment as a matter of law as to Claim One and Claim Two. The Court declines to exercise supplemental jurisdiction as to the remaining claims.

Accordingly, an order will be entered:

1. **DISMISSING WITH PREJUDICE Claims One and Two** in the Amended Complaint **[Doc. 68]**;

2. **GRANTING** Dr. Siddiqi and ETI's Motion for Summary Judgment **[Doc. 79]** as to **Claims One and Two**;

3. **DISMISSING WITHOUT PREJUDICE Claims Four, Five, Six, and Seven**; and

4. **DENYING WITHOUT PREJUDICE** Dr. Siddiqi and ETI's Motion for Summary Judgment **[Doc. 79]** as to **Claims Four, Five, Six, and Seven**.

**ORDER ACCORDINGLY**.

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge

11