UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MAZEN ABU-HATAB, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:06-CV-436 |
| ) | (GUYTON) |
| ) | |
| NASEEM H. SIDDIQI, M.D., and ) | |
| EXTRACORPOREAL TECHNOLOGIES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This case came before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 41]. In a previous Memorandum and Order [Doc. 120], this Court granted the Defendants' Motion for Attorneys' Fees [Doc. 106], but at the time the Court issued its ruling, the Defendants had submitted only a "fair estimate" of the attorneys' fees that they had incurred. The Court ordered the parties to submit briefs discussing what amount would constitute a reasonable attorneys' fees award.

The Defendants filed Memorandum of Naseem H. Siddiqi, M.D. and Extracorporal Technologies, Inc. In Support of Attorneys' Fee Award [Doc. 126] on September 16, 2009. The Plaintiff filed Response to Siddiqi Defendants' Filing in Support of Amount of Attorney Fees [Doc. 127] on September 25, 2009, and the Defendants made a final reply [Doc. 131] on October 5, 2009. Thus, the issue of the appropriate amount of an attorneys' fees award in this case is now ripe for the Court's consideration. For the reasons stated herein, the Court will grant the Defendants an award of attorneys' fees in the amount of $280,530.50.

## I. BACKGROUND

In its previous Memorandum and Order, the Court reviewed the complete procedural posture of this matter. [Doc. 120 at 2-3]. While it is not necessary to review all of the events again, the Court reiterates that the Plaintiff in this matter alleges numerous tort and constitutional violations were committed against him by Blount Memorial Hospital, Naseem H. Siddiqi, M.D., ("Dr. Siddiqi") and Extracorporal Technologies ("ETI").

On April 2, 2009, this Court entered a Memorandum and Opinion and Order [Docs. 100 and 101] granting summary judgment in favor of Dr. Siddiqi and ETI. Specifically, the Court granted summary judgment in favor of Dr. Siddiqi and ETI on the Plaintiff's claim of retaliation for speech in violation of the First Amendment of the United States Constitution, 42 U.S.C. § 1983, and on the Plaintiff's claim of deprivation of procedural due process in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983.

On August 12, 2009, the Court entered an order granting the Defendant's Motion for Attorneys' Fees. Though both the Health Care Quality Improvement Act and the Civil Rights Act contain almost identical attorneys' fees provisions, 42 U.S.C. § 11113 and 42 U.S.C. § 1988, respectively, the Court applied § 1988 because the Court's previous decision was based upon analysis of the constitutional issue. In making the decision to grant attorneys' fees the Court noted that "the Plaintiff's claims against Dr. Siddiqi and ETI obviously lacked essential elements of a civil rights claim—specifically, evidence that either Dr. Siddiqi or ETI acted under color of state law." [Doc. 120 at 10]. The Court found that the Plaintiff's continued pursuit of his constitutional claims against Dr. Siddiqi and ETI were unreasonable and frivolous, and the Court found an award of attorneys' fees to be appropriate. [Doc. 120 at 11].

As previously stated, the issue now before the Court is the amount of attorneys' fee to be awarded.

**II.    ANALYSIS**

Under 42 U.S.C. § 1988, a prevailing party may recover reasonable attorney's fees incurred in successfully prosecuting a claim brought under 42 U.S.C. § 1983. <u>Deja Vu v. Metro. Gov't of Nashville and Davidson County, Tenn.</u>, 421 F.3d 417, 419-20 (6th Cir.2005). Attorney's fees for successful litigants under federal fee shifting statutes are commonly calculated using the "lodestar" method of multiplying the number of hours reasonably expended by a reasonable hourly rate. <u>Web v. Bd. of Educ. of Dyer County, Tenn.</u>, 471 U.S. 234, 242 (1985); <u>Adcock-Ladd v. Sec'y of the Treasury,</u> 227 F.3d 343, 349 (6th Cir. 2000). The reasonableness of the hours expended and the attorney's hourly rate must be considered on a case by case basis. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983).

There are twelve factors which the district court may consider in determining the basic lodestar fee and whether to make adjustments thereto. <u>Reed v. Rhodes</u>, 179 F.3d 453, 471-72 (6th Cir. 1999); <u>see also</u> <u>Hensley</u>, 461 U.S. at 430, n. 3. These factors are:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Reed</u>, 179 F.3d at 472 n. 3; <u>accord</u> <u>Hensley</u>, 461 U.S. at 430 n. 3.

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community for the same type of work at issue. Adcock-Ladd, 227 F.3d at 350. The "relevant community" for fee purposes is the legal community within the court's territorial jurisdiction. Adcock-Ladd, 227 F.3d at 350. The "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the relevant community. Id.

Thus, in a matter, like the one currently before the Court, where a party has sought out-of-town counsel, the "'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable 'home' rate exceeds the reasonable 'local' charge." Adcock-Ladd, 227 F.3d at 350 (citing Hudson v. Reno, 130 F.3d 1193, 1208 (6th Cir. 1997)). The "prevailing market rate" is also "different from the prices charged well-to-do clients by the most noted lawyers and renowned law firms in a region." Coulter v. State of Tenn., 805 F.2d 146, 149 (6th Cir. 1986).

In their memorandum, the Defendants address the factors outlined by Congress and reiterated by the Supreme Court of the United States in Hensley. [Doc. 126 at 4-7]. In pertinent part, the Defendants note that counsel spent two years defending this suit, which presented numerous claims involving intense document review and application of numerous statutory provisions and constitutional precedent. The Defendants note that affidavits submitted to the Court attest to the experience, reputation, and expertise of the attorneys who worked on behalf of the Defendants. The Defendants note that the Plaintiff sought approximately four million dollars in damages against the

4

above-named Defendants and Co-Defendant BMH, collectively, but did not recover any damages because of the Defendants' successful motion for summary judgment. The Defendants have informed the Court of a long professional relationship with Drinker, Biddle & Reath, ("DBR") which dates to 2000. Further, the Defendants have cited the Court to cases awarding significant attorneys' fees awards in similar cases. See Wei v. Bodner, 1992 WL 165860 (D.N.J. April 8, 1992).

The Defendants have also included a discussion of the issue of their customary fees and the fees employed in their calculations. As previously alluded to, the proper hourly rate to be employed in the lodestar method requires special attention in cases where a party has chosen to retain counsel from outside the local community. The Defendants note that the award amount requested in this case has been discounted by approximately twenty percent to reflect the difference in the rate normally charged by attorneys at DBR and the prevailing market rate in the Eastern District of Tennessee. [See Doc. 126 at 4, n. 4, (tallying the total fee investment at $356,721.50) contra Doc. 126 at 7 (making an initial request of $282,048.50 in total)]. The Defendants have discounted the hourly rates normally charged by the attorneys at DBR to the rates charged by local counsel with similar experience. Specifically, the Defendants have discounted the work of partners and/or members with decades of experience and specializations in health care litigation to the rate of $330 per hour, and they have discounted the rates for associates with litigation experience to the rate of $210.00 per hour.

In response to the Defendants' memorandum, the Plaintiff responded that he did not take issue with the hourly rates requested. [Doc. 127 at 5]. However, the Plaintiff maintains that the fee request includes excessive, redundant, and otherwise unnecessary charges. For example, the Plaintiff argues that the Defendants over-billed in composing a number of pleadings and documents including

5

sixty-seven hours spent on the Motion to Dismiss, twenty-five hours on the reply which followed the Motion to Dismiss, and twenty-five hours spent responding to initial written discovery.

The Plaintiff also argues that the Defendant should not be compensated for travel time for DBR attorneys, as it was the Defendants' choice to retain counsel from outside the region. Further, the Plaintiff maintains that the billing documents indicate a duplication of effort and waste caused both by having counsel in two firms and by having eight attorneys work, at different times, on this matter. The Plaintiff also takes issue with the use of associates with less experience in this matter and with the vagueness of a number of the billing entries.

Initially, the Court finds that the rates requested by the Defendants fall within the "prevailing market rate." As previously stated, "prevailing market rate" is "different from the prices charged well-to-do clients by the most noted lawyers and renowned law firms in a region." Coulter, 805 F.2d at 149. While the attorneys retained by the Defendants' were retained from prestigious regional firms, the attorneys' also possessed the specialized knowledge necessary to defend this matter. The Plaintiff does not take issue with the reasonableness of these rates and has offered no affidavits or other evidence undermining the Defendants' assertions that the rates are reasonable. Further, the fees are aligned with other decisions awarding attorneys' fees under § 1988 in this district. See Wimley v. Matheny, 4:06-CV-72,(E.D. Tenn, Dec. 3, 2008) (Carter, J.) (awarding rates of $300.00 per hour and $250.00 per hour to an experienced partner and associates, respectively).

Further, the Court finds that the Hensley factors confirm the reasonableness of this rate. The scope of the allegations in this case and the sheer volume of documents and evidence produced by a years of collegial intervention, meetings, and eventually, the fair hearing process, made this case a particularly time-intensive endeavor. Given this intensity, the case, at least to a degree, would

6

preclude attorneys from taking other large complex cases. The interaction of the constitutional claims presented with the HCQIA presented novel issues which required familiarity with the relationships between healthcare entities, physicians, the government, other employees, and hospital administration. As stated above, the fee requested aligns with customary fees in similar cases, and the experience, reputation, and ability of the attorneys further supports the fee. The results obtained were undeniably favorable, in the face of allegations of millions of dollars in damages. Thus, the Court finds the fees requested reasonable.

The Plaintiff lodges a number of specific objections to the Defendants' request. Looking first at the allegations of redundancy, the Defendants explain that the DBR associates working on this litigation would conduct initial legal and factual research, the DBR partners would prepare the drafts of documents, and local counsel would review and comment on the documents noting local practice and procedure. [Doc. 131 at 4]. The Court finds this explanation to be reasonable and to reflect division of labor that is not uncommon in legal practice. In addition, the Court finds that the interoffice communication cited by the Plaintiffs is reasonable and is not excessive or unnecessary.

As to over-billing, the Court has reviewed the documents submitted in support of the Defendant's claim, and the Court concludes that the time expended by defense counsel in defending this action was reasonable and was not excessive. As previously alluded to, the Plaintiff alleged a plethora of allegations under the United States Constitution and state contract and tort law. Further, the HCQIA and the Tennessee Governmental Tort Liability Act were entailed in defense of this matter from the very beginning. Given the wide-ranging allegations, complicated timeline and facts of this case, and specialized defense implicated, the Court concludes that this case was a difficult case to defend and the hours expended in the defense, though admittedly numerous, were both

necessary and reasonable.

Nonetheless, as part of his response, the Plaintiff noted that Attorney Edwin Brooks billed for 4.6 hours spentrevising the Defendant's reply brief on February 20-21, 2007, after the brief had been filed on February 14, 2007. [Doc. 127 at 6; Doc. 22]. The Defendants respond that the discrepancy was a typographical error, but notwithstanding, the Defendants concede that this entry may be ripe for reduction. The Court finds that the attorneys' fees award should be reduced to remove this error, and accordingly, $1,518.00 will be deducted from the award to Defendants to reflect the removal of this 4.6 hour block of time.

The Plaintiff also contends that the use of associate attorneys, rather than more experienced attorneys, on this case resulted in additional hours being used to complete tasks. [Doc. 127 at 8]. The Plaintiff's proposition is almost certainly true, but billing rates are formulated to reflect the fact that associates may take longer to complete a task. Because it takes associates longer to complete tasks, they bill at lower rates—in this case, at a rate approximately thirty-three percent lower than that of the more experienced attorneys. In sum, the Court finds that the lower hourly rates charged by the less-experienced attorneys sufficiently addressed the likelihood that they may require more time to complete a given task. The Court finds that the Plaintiff has cited no authority to the contrary.[1]

---

[1] The Plaintiff cites the Court to "*Ottis v. Shalala*, No. 1:92CV426, 1994 US Dist. LEXIS 16324, n. 1 (W.D. Mich 1994)," in support of this proposition. The only case, unpublished or published, from the Western District of Michigan that the Court has found is Ottis v. Shalala, 862 F.Supp. 182 (W.D. Mich 1994), and it does not discuss attorneys' fees. Further, using the citation "1994 US Dist. LEXIS 16324" yields In re Neal, 177 B.R. 892, 1994 U.S. Dist. LEXIS 16324 (N.D. Ind. 1994), a wholly unrelated matter.

8

Case 3:06-cv-00436   Document 132   Filed 11/25/09   Page 8 of 11   PageID #: 1662

The Plaintiff also takes issue with the specificity of a number of the billing entries submitted in support of the Defendants' request. [Doc. 127 at 9]. For example, the Plaintiff contends the following entries, *inter alia*, are insufficient: "telephone calls regarding new matter," "work on Hatab lawsuit issues," "working on motion to dismiss," "work on Reply brief Siddiqi," etc. [Doc. 127 at 9]. The Plaintiffs cite the Court to Reed v. Rhodes, 179 F.3d 453 (6th Cir. 1999), a case in which the Court of Appeals reiterated that parties are to submit informative billing records that do not frustrate meaningful assessment of applicants' work efforts. Id. at 472. The court in Reed upheld the lower court's determination that the plaintiffs had failed to "demonstrate compliance with generally accepted billing practices in [the area]." Id.

The Defendants have submitted dozens of pages of billing entries to the Court. Each of the entries specifies the date on which the work was completed, the number of hours used, the attorney completing the task, the dollar amount for the block of time, and a brief description of the work. [Doc. 126-1 at 6-69; Doc. 126-2 at 3-31]. The specificity of each billing entry varies depending upon the work completed, but after examining the entries, including those highlighted by the Plaintiff, the Court concludes that the entries comply with the generally accepted billing practices in the Eastern District of Tennessee and are thorough enough to allow for a meaningful review of the billing. The Court finds the billing records to be sufficient.

Finally, the Plaintiff argues that the Defendant's award should not compensate for approximately seventy hours of travel time to and from Tennessee for trips made in September 2007, July 2008, August 2008, and October 2008. [Doc. 127 at 7]. The Plaintiff maintains that the Defendants chose to hire attorneys from Chicago to litigate this case, when competent counsel was available in East Tennessee. The Plaintiff reasons that the travel charges were unnecessary to defend

9

the case. The Defendants respond that during the travel time the attorneys were also conducting factual and legal research. [Doc. 131 at 7]. The Defendants also maintain that out-of-town counsel only traveled to Tennessee for major events in the case.

As the parties have acknowledged, the Court of Appeals for the Sixth Circuit has not addressed the issue of whether travel for out-of-town counsel should be compensated in an attorneys' fees award. The Court of Appeals has explained only that this issue falls within the discretion of the district court. Perotti v. Seiter, 935 F.2d 761, 764 (6th Cir. 1991). At least two district judges within this circuit have been presented with the issue, and both have concluded that counsel may be compensated for travel. See Disabled Patriots of Am., Inc. v. Reserve Hotel, 2009 WL 2591626 (N.D. Ohio August 20, 2009) (O'Malley, J.); Disabled Patriots of Am., Inc. v. Beverly Terrace, Ltd., 2008 WL 4426344 (N.D. Ohio September 25, 2008) (Boyko, J.). For example, in Disabled Patriots of America, Inc. v. Reserve Hotel, the district court noted that parties are generally entitled to counsel of their choice, especially where counsel's retention appears reasonable in light of his or her experience litigating similar matters. 2009 WL 2591626, at *8. The court further noted that counsel attempted to schedule travel efficiently. Id.

After reviewing the documentation and filings before it, the Court concludes that the DBR and the Defendants have a long-term relationship and that the attorneys at DBR who staffed this matter had specialized expertise in the issues presented. Thus, the retention of out-of-town counsel was a considered and reasonable choice by the Defendant. Further, the DBR attorneys rationed their travel time and traveled to Knoxville only when necessary, for example, for crucial depositions and hearings. Further, the Court finds that when the DBR attorneys traveled from Chicago to Tennessee, their travel time was simultaneously used for preparation and other work related to the case. [See,

10

Case 3:06-cv-00436  Document 132  Filed 11/25/09  Page 10 of 11  PageID #: 1664

e.g., Doc-131-1 at 14, entry September 9, 2007, "Travel to Knoxville, TN from Chicago; prepare for court hearing; conferences with Mr. Brooks regarding same."]

Thus, based upon the Defendants' right to counsel of their choice, especially in a case regarding specialized healthcare and constitutional issues, and upon counsel's rationed and efficient use of their travel time, the Court finds that it is appropriate to compensate for this time in the attorneys' fees award, as it is neither unnecessary nor excessive.

## III. CONCLUSION

In sum, the Court finds that the Defendants' request for an award of $280,530.50 in attorneys' fees, which reflects a deduction of $1,518.00 for an erroneous entry, see supra at 8, is reasonable. Accordingly and pursuant to the Court's previous Order [Doc. 120] granting the Defendant's Motion for Attorneys' Fees, an order **AWARDING** the Defendants $280,530.50, representing the reasonable attorneys' fees incurred in defense of this action, shall be entered forthwith.

**ORDER ACCORDINGLY.**

ENTER:

    s/ H. Bruce Guyton
United States Magistrate Judge